

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00415-CR

Gilberto **CARREON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR3963
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: August 14, 2019

AFFIRMED

A jury convicted appellant Gilberto Carreon of the offense of murder. Based upon the jury's recommendation, the trial court sentenced Carreon to twenty years' imprisonment. In three issues, Carreon contends the evidence is insufficient to support his conviction, he received ineffective assistance of counsel, and the trial court improperly found Carreon competent to stand trial. For the reasons discussed below, we affirm the trial court's judgment.

## BACKGROUND

In the early morning of January 25, 2017, Carreon called 9-1-1 as he was in the act of stabbing the complainant multiple times. The complainant was later identified as Jose Reyes Garcia via fingerprints. Garcia can be heard screaming and moaning in the background of the 9-1-1 call recording, which was admitted during trial. During the call, Carreon admitted to the 9-1-1 operator that "I stabbed him" and that "I don't know how many times I stabbed him." When instructed by the 9-1-1 operator to not stab Garcia any more, Carreon responds, "Well he shouldn't have put his f[]ing hands on me." Carreon also told the 9-1-1 operator, "He didn't listen, so I did what I did."

In response to an emergency tone, San Antonio Police Department ("SAPD") Officer Todd Johnson, the pilot of the police helicopter, flew to the location and focused the helicopter's infrared camera on the reported scene. Via the camera's onboard monitor, Officer Johnson viewed someone in a wheelchair signaling the helicopter. Officer Johnson also saw a person lying on the ground with another person on top. It appeared to Officer Johnson that the person on top was striking or stabbing the person lying on the ground. The video recording from the helicopter's infrared camera, which was admitted during trial, indicates the incident took place at approximately 1:30 a.m.

San Antonio Fire Department ("SAFD") firefighter and Emergency Medical Technician ("EMT") Will Rivera arrived at the scene approximately three minutes after the initial 9-1-1 call. When Rivera arrived, he initially approached a man in a wheelchair. The man in the wheelchair looked to where an incident was taking place. Rivera saw one man lying face down on the ground with his arms spread out and with second man sitting on the first man's back. The second man, identified as Carreon, was "driving what appeared to be a knife into his back over and over," which

Rivera later quantified as more than three but less than seven times. Rivera noticed Carreon's face was covered in blood, and he described the knife as a folding knife.

SAPD Officers Christian Castillo and Clint Bush also responded to the scene while the incident was in progress. When Officer Castillo arrived and approached, he saw Carreon straddling Garcia with a knife in his hand. Officer Castillo drew his sidearm and instructed Carreon to drop the knife. Carreon threw the knife to the side and crawled off of Garcia. Officer Castillo then handcuffed Carreon, who he described as "pretty calm."[1] Officer Castillo eventually arrested Carreon for aggravated assault with a deadly weapon. The charges against Carreon were later upgraded to murder when Garcia died from his wounds.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Carreon contends the evidence presented at trial is insufficient to support his conviction. Carreon specifically states he

> does not dispute and is not arguing that he [is] not the person identified as the person that was at the scene and had been stabbing the complainant, rather it is [Carreon]'s position that the evidence presented was legally insufficient to prove that he committed Murder as specified under [the] Texas Penal Code and that he did not have the right for self[-]defense under [the] Texas Penal Code.

(emphasis omitted).

### Applicable Law and Standard of Review

To prevail on a claim of defense of person with the use of deadly force, a defendant must prove: (1) he would have been justified in using force against the other person; and (2) it was reasonable to believe that "deadly force [was] immediately necessary [for protection] against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a)(1), (2)(A) (West 2011). "[A] person is justified in using force against another when and to the degree

---

[1] The video recordings from Officer Castillo's body-worn camera and his COBAN (dash camera) were admitted into evidence.

the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. at § 9.31(a).

A person in lawful possession of property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate another's unlawful interference with the property. *Id*. § 9.41(a). A person, who would be justified in using force under section 9.41, is justified in using deadly force against another to defend property when and to the degree he reasonably believes deadly force is immediately necessary to prevent the other who is fleeing immediately after committing robbery or theft during the nighttime from escaping with the property, if he reasonably believes that the property cannot be recovered by any other means or the use of force other than deadly force to protect the property would expose him to a substantial risk of death or serious bodily injury. *Id*. § 9.42.

Once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). To meet its burden of persuasion, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913. If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Id*. at 914.

When a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense claim, we do not look to whether the State presented evidence that refuted defendant's self-defense evidence. *Id*. Instead, we determine whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against defendant on the self-defense issue beyond a reasonable doubt. *Id*. In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the

weight given to their testimony. *Carey v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016). The jury is free to accept or reject any and all defensive evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Saxton*, 804 S.W.2d at 914. Further, we defer to the jury's resolution of any conflicts in the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

**Discussion**

The jury was charged that Carreon committed the offense of murder if he intentionally or knowingly caused Garcia's death by cutting or stabbing Garcia with a deadly weapon (a knife) or if Carreon, with the intent to cause serious bodily injury to Garcia, committed an act clearly dangerous to human life that caused Garcia's death by cutting or stabbing Garcia with a deadly weapon (a knife). The evidence is undisputed that Carreon stabbed Garcia at least twelve times, which was an act clearly dangerous to human life, and Garcia died as a result. Officer Bush testified the knife recovered from the crime scene was one capable of causing serious bodily injury or death. Dr. McClain described eleven stab wounds to Garcia's back as "rather significant," and noted that some of the wounds passed through vertebrae, entered the spinal canal, and punctured the lungs. Dr. McClain also described a stab wound to Garcia's chest cavity that pierced his heart. Accordingly, the evidence establishes every essential element of the offense of murder beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. We next examine whether the jury also could have found against Carreon on the self-defense and defense of property issues beyond a reasonable doubt.

Carreon points to his own testimony as support for his contention that the jury's rejection of his self-defense or defense of property claims was erroneous. Carreon testified that he encountered Garcia in October 2016, when Carreon alleges Garcia disturbed Carreon's belongings and ate his food. Carreon also testified he caught Garcia eating his food in November 2016, and Carreon alleged Garcia stole an Army jacket from him that Garcia then sold to another person

approximately three weeks before the offense. Carreon also testified Garcia showed him a gun at Carreon's campsite on the same day the jacket was stolen. Carreon testified that at the time of the offense, Garcia woke him by hitting him and asked for a cigar. Carreon further testified that when he told Garcia he did not have a cigar, Garcia reached over Carreon and grabbed Carreon's backpack. According to Carreon, Garcia told him "I'll take anything from you. I'll kill you and I'll go back to Mexico, you wetback." Carreon testified that when he told Garcia to leave him alone, Garcia opened Carreon's storage bin and reached into the bin as though he was going to take things out of it without permission. According to Carreon, Garcia then charged at Carreon and told Carreon he had a gun. Carreon insisted that he feared for his life and testified that he then pulled out his knife and stabbed at Garcia several times. Carreon further testified that he and Garcia began wrestling and Garcia fell down face first. Carreon ended up on Garcia's back and continued stabbing Garcia in what Carreon characterized as self-defense. Carreon admitted that when Garcia charged at him, Garcia had nothing in his hands.

After viewing all the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. We further conclude, that a rational jury could have found against Carreon on the self-defense and defense of property issues beyond a reasonable doubt. *Id*.

Carreon's first issue is overruled.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In his second issue, Carreon contends his trial counsel was ineffective for failing to move for a directed verdict and for failing to obtain an investigator.

**Standard of Review and Applicable Law**

To prevail on an ineffective assistance of counsel claim, Carreon must establish both that his trial counsel performed deficiently and that the deficiency prejudiced him. *See State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With respect to the first prong, the record on appeal must be sufficiently developed to overcome the strong presumption of reasonable assistance. *See Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Absent an opportunity for trial counsel to explain his actions, we will not conclude his representation was deficient "unless the [challenged] conduct was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Texas procedure makes it "virtually impossible" for appellate counsel to present an adequate ineffective assistance of trial counsel claim on direct review. *See Trevino v. Thaler*, 569 U.S. 413, 423 (2013). This is because the inherent nature of most ineffective assistance of trial counsel claims means that the trial court record "will often fail to 'contai[n] the information necessary to substantiate' the claim." *Id*. at 424 (quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (en banc)). Consequently, the better procedural mechanism for pursuing a claim of ineffective assistance is almost always through writ of habeas corpus proceedings. *Freeman v. State*, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003).

**Discussion**

The record in this case does not indicate why trial counsel did not move for a directed verdict at the close of the guilt/innocence stage. Without evidence providing trial counsel's explanation as to why counsel did not move for a directed verdict, we cannot conclude that not presenting such a motion was not reasonable assistance. *See Thompson*, 9 S.W.3d at 813–14. Moreover, a motion for a directed verdict would only have been required if there was insufficient evidence. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). As we have already

determined above that there was sufficient evidence, counsel was not compelled to make such a motion. *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (counsel is not required to engage in the filing of futile motions).

Additionally, we determine that Carreon's contention that trial counsel was ineffective for failing to obtain an investigator is likewise without merit. Carreon argues an investigator should have been obtained to locate a witness to the offense. However, the record before us provides no explanation for trial counsel's decision not to obtain an investigator for the purpose of locating a witness to the offense. Further, an appellant may base an ineffective assistance claim on counsel's failure to present a witness only if the appellant can show that the witness was available and his testimony would have benefitted the appellant. *Ross v. State*, 802 S.W.2d 308, 313 (Tex. App.— Dallas 1990, no pet.). Here, Carreon has not shown that the witness's testimony would have changed the outcome of the trial. Thus, upon review of the totality of the circumstances, we conclude Carreon has failed to demonstrate that trial counsel's actions amounted to ineffective assistance of counsel.

Carreon's second issue is overruled.

### COMPETENCY HEARING

In his third issue, Carreon contends the trial court erred by denying his motion for competency evaluation without first questioning Carreon whether he agreed with counsel's statement that counsel had no evidence of incompetency.

### Applicable Law and Standard of Review

Incompetency to stand trial is shown if a person does not have: "(1) sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [her]." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). The Texas Court of Criminal Appeals has noted that mental illness, by

itself, does not equate to incompetence to stand trial. *Turner v. State*, 422 S.W.3d 676, 691 (Tex. Crim. App. 2013). The inquiry is whether the defendant's mental illness "operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests." *Id*. A defendant must show his mental illness "prevents him from rationally understanding the proceedings against him or engaging rationally with counsel" to support a finding of incompetency. *Id*. "Evidence that raises this possibility necessitates an informal inquiry … ." *Id*.

Procedurally, a trial court employs two steps in making competency determinations. "The first step is an informal inquiry; the second step is a formal competency trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). "An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Id*.; *see* TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (c), (c-1). During the informal inquiry, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c). "If that requirement is met, the trial court must order a psychiatric or psychological competency examination, and, except for certain exceptions, must hold a formal competency trial." *Boyett*, 545 S.W.3d at 563; *see* TEX. CODE CRIM. PROC. ANN. arts. 46B.005(a), (b), 46B.021(b).

We review issues involving competency determinations for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute*, TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1). We may not substitute our judgment for that of the trial court; instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426.

**Discussion**

In this case, the trial court conducted the first step in the process by conducting an informal inquiry into Carreon's competency following trial counsel's filing of a motion requesting a competency evaluation. In the motion, counsel states "[t]here is an issue in this cause regarding whether [Carreon] is 'competent' to stand trial … ." During a pretrial hearing addressing the motion for competency evaluation, counsel stated:

> Your Honor, as to the competency, when we were in court discussing he was diagnosed — or he told me his diagnosis was schizophrenia, [that he] was receiving treatment through the Center for Health Care Services for at least schizophrenia, [and] I believe one other mental health condition. And so based on that[,] and based on what he told me happened at the time of the offense which made me file [a] motion for insanity[,] I wish to have him evaluated for his competency.

The trial court acknowledged counsel's assertion of a mental illness diagnosis and questioned "but is there anything to indicate [to] you on that he's having problems understanding the proceedings against him or communicating with you effectively?" Counsel responded in the negative. The trial court then noted: "If he's not having one of those issues, you can be mentally ill but competent. I don't see a competency issue there." The trial court asked counsel whether he had any further evidence regarding the competency issue. Counsel did not, and the trial court denied the competency evaluation.

The record before us does not provide any evidence that would support a finding that Carreon was incompetent to stand trial at the time the trial court conducted the informal inquiry into Carreon's competency. To the extent Carreon contends the trial court was required to ask him specifically whether he agreed with counsel's evaluation that Carreon did not have problems understanding the proceedings against him or communicating with counsel effectively, Carreon

has provided no authority and we have found none, to support this contention.  Accordingly, we cannot conclude the trial court abused its discretion by not ordering a competency evaluation.

Issue three is overruled.

## CONCLUSION

For the above reasons, we affirm the judgment of the trial court.

Irene Rios, Justice

DO NOT PUBLISH